UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JEROME LAWS,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 1:24-cv-00309-KES-CDB (SS)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRM DECISION OF COMMISSIONER OF SOCIAL SECURITY<br><br>(Docs. 17, 20)<br><br>**Objections Due – 14 days** |

Plaintiff Anthony Jerome Laws ("Plaintiff") proceeds pro se and seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 13-1, "AR") and the parties' briefs (Docs. 17, 20, 24), which were submitted without oral argument. Upon review of the record, the Court finds and rules as follows.

## I. BACKGROUND

### A. Administrative Proceedings and ALJ's Decision

On July 15, 2021, Plaintiff protectively filed an application for supplemental security income (SSI) under Title XVI of the Social Security Act (the Act), alleging disability due to paranoid schizophrenia (AR 15, 243-47, 281). Plaintiff's claim was initially denied on December 22, 2021, and again upon reconsideration on March 4, 2022. (AR 97, 117). At his request, Plaintiff

received a hearing before an Administrative Law Judge on March 10, 2023. (AR 30-67). *Id.* Anne Sharrard, the Administrative Law Judge ("ALJ"), proceeded with Plaintiff, Plaintiff's attorney, and impartial vocational expert Deborah Dutton-Lambert. *Id.* The ALJ issued an unfavorable decision on April 14, 2023, finding Plaintiff was not disabled. (AR 15-29). The Appeals Council denied Plaintiff's request for review on January 10, 2024, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1-6). Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision. (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520(a). (AR 17-27). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2021, the alleged onset date. (AR 17).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit his ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: panic disorder, depression, and anxiety. (AR 17-18). The ALJ found other impairments that are not the subject of Plaintiff's appeal here to be non-severe. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18). The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[1] Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than

---

[1] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.* To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.*

moderate limitations in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied. (AR 18-19). The ALJ also found that the evidence in this case fails to establish the presence of "paragraph C" criteria.[2] (AR 20).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform a full range of work as defined in 20 C.F.R. §§ 404.1567(a) except for the following non-exertional limitations:

> [Plaintiff] can understand, remember, and carry out simple and routine instructions. He can handle occasional changes in a routine work setting and use judgment to make simple decisions. He cannot perform requiring a specific production rate, such as assembly-line work, or work that requires hourly quotas, but can perform goal-oriented work that can be completed by the end of the work shift. He can have occasional interaction with supervisors and co-workers in a job working primarily with things rather than people. He can have no interaction with the general public.

(AR 19-20).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted she followed the two-step process as set forth in 20 C.F.R. § 404.1529, SSR 16-3p, and 20 C.F.R. § 404.1527. *Id.* The ALJ summarized Plaintiff's hearing testimony:

> [Plaintiff] is 44 years old, 5'8" tall and weighs 140 pounds, right-handed, and is homeless but was staying with his mother and brother at the time of the hearing. He reported that he is not able to work because he is very paranoid. He hears voices and they tell him that people are out to kill him and attack him. The voices tell him that he has to attack, or he will be attacked, so he must defend himself. He then sees people coming after him but does not want to go back to prison, which he will if he attacks someone. The voices tell him to either leave or attack, so he leaves. He reported that his hands shake all the time as a side effect of his medications. He also reported having difficulty sleeping.

(AR 20) (citing Hearing Testimony).

Upon consideration of the evidence, the ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of symptoms are inconsistent with the record. (AR 20). The ALJ acknowledged that although Plaintiff's allegations of the severity and persistence of his symptoms are not fully consistent with the record, she found that the symptoms still resulted in some

[2] Paragraph C is not at issue in Plaintiff's challenge here.

reasonable limitations in Plaintiff's ability to perform basic work activities. (AR 21). The ALJ noted that Plaintiff was limited to understanding, remembering, and carrying out simple and routine instructions; handling occasional changes in a routine work setting and using judgment to make simple decisions; not performing where a specific production rate was required, such as assembly-line work, or work that requires hourly quotas, but performing goal-oriented work that can be completed by the end of the work shift; and having only occasional interaction with supervisors and co-workers in a job working primarily with things rather than people, and no interaction with the general public. *Id.*; (AR 19 n.3)

The ALJ, considering the record of Plaintiff's hearing testimony, medical evidence, treatment history and notes, activities of daily living ("ADLs"), prior administrative medical findings, and limiting effects of Plaintiff's symptoms, determined that the record does not support limitations that would prevent him from working within the RFC. (AR 20-24). The ALJ concluded that the assessed RFC is supported by the evidence and that the RFC is consistent with the medical record as a whole. *Id.*

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work and that transferability of job skills is not an issue. (AR 24) (citing 20 C.F.R. § 404.1565). The ALJ found that Plaintiff was a younger individual age on the date the application was filed and had at least a high school education. *Id.*

At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (AR 25). The ALJ cited commercial cleaner and floor waxer based on the testimony of the vocational expert. *Id*. The ALJ therefore concluded a finding of "not disabled" was appropriate under section 204.00 of the Medical-Vocational Guidelines and 20 C.F.R. § 416.920(g)). *Id*.

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II. <u>LEGAL STANDARD</u>

A district court's review of a final decision of the Commissioner of Social Security is

governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the

claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III. ISSUES AND ANALYSIS[3]

### A. Plaintiff Improperly References New Evidence and Advances Arguments First Presented in His Reply Brief

Some of the evidence attached to Plaintiff's opening and reply briefs is dated after the date of the ALJ's opinion (April 14, 2023) and, thus, is not part of the certified administrative record. *See* (Doc. 17 at 58-60; Doc. 24 at 27-29). He argues this "new evidence" – which consists of records signed by his treating physician, Dr. Asarolislan Syed, documenting more recent treatment or observations of Plaintiff – should be considered by the Court given that Plaintiff has remained under the care of Dr. Syed and such evidence is "extremely material" to Plaintiff's entitlement to benefits. (Doc. 24 at 17). He argues that his prior counsel informed "the court" that Plaintiff's new evidence was being proffered, citing "Plaintiff's Administrative Report" at page 238, and that this constitutes an "unusual or unexpected" circumstance warranting the Court's consideration of the new evidence. (Doc. 24 at 18).

The Court construes Plaintiff's reference to page 238 of "Plaintiff's Administrative Report" to be page 238 of the Certified Administrative Record, which, in fact, is the first page of claimant counsel's letter to the Appeals Council seeking to appeal the ALJ's decision. See (AR 238-42).

[3] Filings are referenced herein according to the associated CM/ECF-designated pagination.

However, contrary to Plaintiff's characterization, here, claimant's counsel did not proffer new evidence to the Appeals Council and did not indicate in his letter to the Appeals Council that he was seeking consideration of new evidence. In short, because Plaintiff's new evidence cited above did not become part of the administrative record, this Court may not consider it. *See Amor v. Berryhill*, 743 Fed. Appx. 145, 146 (9th Cir. 2018) (citing *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003)).

Moreover, Plaintiff's new evidence submitted in support of his request for review by this Court does not create a "reasonable possibility" it would change the ALJ's decision because it largely repeats Dr. Syed's earlier opinion already considered by the ALJ that Plaintiff has certain mental health diagnoses and is, according to Dr. Syed, "unemployable." *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (to warrant remand, claimant must show "reasonable possibility" new evidence would have changed outcome); *see also Berkebile v. Berryhill*, 714 Fed. Appx. 649, 651 (9th Cir. 2017) ("Nor does Dr. Howsepian's May 2013 opinion [issued after the ALJ's decision] create a reasonable possibility of a different outcome, as it largely reflects the same opinions as in October 2012, but couched more in social security parlance. Moreover, medical opinions issued after an adverse ruling are less persuasive.") (citing *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (quotation omitted).

Separately, Plaintiff raised for the first time in his reply brief a new argument about the ALJ's treatment of the paragraph B criteria and associated finding that Plaintiff's severe impairments do not rise to the level of an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *See* (Doc. 24 at 5-7). In general, a party waives arguments not presented in its opening brief because waiting to present such arguments until its reply deprives the opponent of an opportunity to respond. *E.g., Zarate v. Berryhill*, No. 1:18-cv-00316-JDP, 2019 WL 2285399, at *3 (E.D. Cal. May 29, 2019) (citing cases); *Williams-Carter v. Comm'r of Soc. Sec.*, No. 2:13–cv–1744–KJN PS, 2015 WL 367494, at *4 (E.D. Cal. Jan. 27, 2015) ("Although the court liberally construes the pleadings and filings of a pro se litigant, it cannot address issues improperly raised in a reply brief, and to which the Commissioner has not had a meaningful opportunity to respond.").

Even if the Court considered the new argument, it would reject it because it is premised on the same argument's Plaintiff otherwise alleges about the ALJ's erroneous treatment of his symptomology testimony and his rejection of Dr. Syed's assessment that Plaintiff is "unemployable" (discussed further *infra*).

For these reasons, the Court disregards Plaintiff's new evidence of records documenting Plaintiff's treatment occurring after the ALJ issued his decision and declines to consider Plaintiff's new argument concerning the paragraph B criteria submitted for the first time in his reply brief.

**B. The ALJ Did Not Impermissibly Discount Plaintiff's Symptomology Testimony**

1. Plaintiff's Contentions

Plaintiff argues that the ALJ "disregarded key testimony by plaintiff as to how [his] impairments affect his ability to engage in any substantial gainful activity on a sustained basis." (Doc. 17 at 6). Although he does not identify this testimony, he attaches to his motion for summary judgment approximately 12 pages from the transcript of the hearing before the ALJ and argues his testimony was consistent with the diagnoses of one or more doctors made regarding his paranoid schizophrenia, anxiety, depression, and panic disorder. (Doc. 17 at 8). Plaintiff argues the ALJ "seems to rely on the report from" Dr. Gil Schmidt, a consultative examiner ("CE"), "who Plaintiff only saw for five minutes." (Doc. 17 at 8). In his reply brief, Plaintiff additionally argues that the ALJ's opinion "does not fairly and accurately summarize" his testimony. (Doc. 24 at 4).

2. Governing Authority

"In step two of the disability determination, an ALJ must determine whether the [plaintiff] has a medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 725 (9th Cir. 2011). A plaintiff has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking,

standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

The ALJ is responsible for determining credibility,[4] resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if "the [plaintiff] has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the plaintiff to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen*, 80 F.3d at 1282.

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the [plaintiff's] testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281). *See*

---

[4] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character but an endeavor to "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility" assessment when reviewing claims that an ALJ impermissibly discounted a claimant's testimony. *See*, *e.g.*, *Ferguson v. O'Malley*, 95 F.4th 1194, 1204 (9th Cir. 2024).

*Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1) ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in SSR 16-3P. *Id*. (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). Accord *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or

other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001). *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the [plaintiff's] complaints – '[g]eneral findings are insufficient.'" *Id.* (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

3. Analysis

As an initial matter, the Court notes that the ALJ did not entirely discount Plaintiff's allegations of symptoms and effects from his panic disorder, depression, and anxiety. Rather, the ALJ largely accommodated these limitations by restricting Plaintiff to a job working primarily with things rather than people, and no interaction with the general public. (AR 21); see 20 C.F.R. § 404.1567(a).

To the extent the ALJ rejected more extreme limitations indicated by Plaintiff's testimony, the ALJ accurately summarized and identified reasons for discounting the testimony. Specifically, the ALJ acknowledged Plaintiff's testimony that he is unable to work because he is very paranoid, hears voices telling him that people are out to kill him and attack him and that he has to attack, or he will be attacked, so he must defend himself. The ALJ separately acknowledged Plaintiff's testimony that he then sees people coming after him but does not want to go back to prison, which he will if he attacks someone, and that the voices tell him to either leave or attack, so he leaves. The ALJ noted Plaintiff's testimony that his hands shake all the time as a side effect of his medications and that he reported having difficulty sleeping. (AR 20).[5]

After acknowledging Plaintiff's hearing testimony, the ALJ first found that Plaintiff's allegations regarding the severity of his symptoms are "inconsistent" with the objective medical evidence reflecting he has some limitations but is capable of work within the confines of the RFC. Although an ALJ may not rely exclusively on a lack of corroborating medical evidence to discount a plaintiff's symptomology testimony, such evidence permissibly may be considered. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). Among other records, the ALJ cited a June 15, 2022, progress note that Plaintiff reported hearing voices all the time but could usually distinguish them from reality. (AR 21) (citing AR 561). The ALJ also relied

[5] Because the ALJ accurately summarized Plaintiff's testimony, the Court rejects his argument first raised in his reply brief that the ALJ's opinion fails to accurately summarize his testimony. *See* (Doc. 24 at 4); *cf. Zarate*, 2019 WL 2285399, at *3 (finding arguments first raised by social security plaintiff on reply are improper); *Williams-Carter*, 2015 WL 367494, at *4 (same).

on the assessment by Dr. Schmid (the CE), who noted that throughout the interview process, Plaintiff presented a mixture of deferring to his mother in responding to standardized questions as well as constantly construing that his difficulties in life were due to his mental health diagnosis that he received in 2013. In addition, the ALJ relied on Dr. Schmidt's note that Plaintiff reported sleeping more than six hours without considerable distress despite appearing to over-endorse significant sleep deprivation. The ALJ further relied on Dr. Schmidt's observation that Plaintiff's presentation appeared to be noticeably negative with frequent spontaneous redirection of the interview process by calling attention to any behavioral difficulties of emotional upsets to be related to his diagnosis of paranoid schizophrenia. According to Dr. Schmidt, however, Plaintiff appeared in a manner that was inconsistent with the diagnosis as he was noticeably polite, cooperative, responsive, and appropriate in all his answers to all standardized questions. Finally, the ALJ cited other objective medical evidence noted by Dr. Schmidt that was not consistent with Plaintiff's symptomology testimony, including that his mood and affect was within normal limits with appropriate sense of humor, that he was polite, cooperative, and responsive to all standardized questions, and was fully oriented with intact memory. (AR 20). In partially discounting Plaintiff's symptomology testimony, the ALJ permissibly considered Dr. Schmidt's observations and findings regarding Plaintiff's symptoms and presentation. *See Smolen*, 80 F.3d at 1284.

In weighing a claimant's credibility, the ALJ also permissibly may consider, among other things, inconsistencies in the claimant's testimony and testimony from physicians concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997). The ALJ here relied on these types of measurements in assessing Plaintiff's credibility. For instance, the ALJ contrasted Plaintiff's testimony that he declines to attack people that he hears and sees because he does not want to return to prison, with his statement to Dr. Schmidt that he usually can distinguish them from reality. The ALJ also relied on Dr. Schmidt's observation that, contrary to Plaintiff's claims to being sleep deprived, he acknowledged sleeping more than six hours without considerable distress. Further, the ALJ noted the inconsistency between Plaintiff's hearing testimony that his hands shake when he takes medications with the fact that, although there are numerous references in the medical record to his statements

to medical providers about his medications, Plaintiff did not report to any of those providers that his hands shake. (AR 21-22) (citing Exs. 5F and 6F).

The ALJ also permissibly considered inconsistencies in Plaintiff's varying characterizations of his engagement in activities of daily living. For instance, while Plaintiff claimed during his hearing testimony that he does not engage in chores (AR 58), the ALJ noted his conflicting statement to Dr. Schmidt that he performs occasional chores. (AR 22) (citing AR 534). Similarly, the ALJ relied on the fact that Plaintiff's statement to Dr. Schmidt that he intentionally spends much of the day indoors involved with indoor activities, such as cooking (AR 534) was inconsistent with his SSA function report representing that he cannot prepare his own meals. (AR 329).

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work, which the ALJ did here." *Smartt*, 53 F.4th at 499. As summarized above, the ALJ identified several permissible, specific, clear, and convincing reasons supporting a finding that Plaintiff's limitations were not as severe as he claimed.

**C. The ALJ Was Not Required To Afford More Weight to a Treating Provider**

In both his opening and reply briefs, Plaintiff argues that a treating physician's opinion "carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician." (Doc. 17 at 8; Doc. 24 at 22) (citing, *inter alia, Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). Thus, Plaintiff argues that the ALJ should have accorded more deference to the opinion of Dr. Syed (his treating physician) than Dr. Schmidt (the CE). (Doc. 24 at 23).

Plaintiff incorrectly relies on a legal standard that has been superseded by revised regulations. It is true for Social Security disability cases filed *before* March 27, 2017, that the ALJ in general was to give "more weight … to the opinion of a treating source than to the opinion of doctors who do not treat the claimant" because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, cases (like Plaintiff's) commenced after that date are subject to revised regulations pursuant to which "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." *Woods v.*

*Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5844) (alterations in original). While under the revised regulations operative here, the relationship between the medical provider and the patient is a relevant consideration, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Id*. at 792. *E.g., Melynda G v. Kijakazi*, No. 5:20-cv-00890-JC, 2022 WL 911585, at *4 n.7 (C.D. Cal. Mar. 29, 2022) ("For an application filed on or after March 27, 2017, 20 C.F.R. § 404.1520c would apply. 20 C.F.R. § 404.1520c changed how the Social Security Administration considers medical opinions and prior administrative medical findings, eliminated the use of the term 'treating source,' and eliminated deference to treating source medical opinions.") (citations omitted).

**D. The ALJ Properly Evaluated the Persuasiveness of the Relevant Medical Opinions**

Plaintiff argues the ALJ improperly disregarded the opinion of his treating physician, Dr. Syed, that he is "unemployable" because of his diagnosed paranoid schizophrenia, anxiety, depression, and panic disorder. (Doc. 17 at 8; Doc. 24 at 6, 9, 14). He also argues that the ALJ appeared improperly to defer more to the opinion of Dr. Schmidt (the CE) than to the opinion of Dr. Syed (Plaintiff's treating physician).

First, Dr. Syed offers no objective medical findings in support of his indication of Plaintiff's mental health diagnoses (paranoid schizophrenia, anxiety, depression, and panic disorder) or his conclusory statement that Plaintiff is "unemployable." *See* (AR 24) (citing AR 541-42). Plaintiff refers to and attaches to his opening brief certain "Follow-Up" reports authored by Dr. Syed that similarly fail to set forth objective findings relating to Plaintiff's mental health conditions and reflect that the various assessments/diagnoses are based on an "impression – Per clt. [client] report." *See, e.g.*, (Doc. 17 at 16-19, attaching AR 549-52; id. at 32-35, attaching AR 565-68; id. at 36-39, attaching AR 569-72; id. at 49-52, attaching AR 582-85). On this record, the Court finds that the ALJ properly concluded Dr. Syed's opinion is "unpersuasive" because his assessments are "vague" and "speculative." (AR 24); *see, e.g., Campell v. Comm'r of Soc. Sec.*, No. 2:14-cv-2386-CMK, 2016 WL 1108936, at *4 (E.D. Cal. Mar. 22, 2016) ("the ALJ properly concluded that Dr. Singer's

assessment is vague and generalized. In particular, the doctor offers no specific opinions as to plaintiff's functional capabilities except the conclusory statement that plaintiff is 'unemployable.'").

Second, the ALJ permissibly discounted Dr. Syed's assertion that Plaintiff is "unemployable." "An ALJ is entitled to reject a treating physician's conclusion that a plaintiff's condition rendered him disabled and unemployable since that is not the doctor's role." *Blew v. Astrue*, No. 1:09-cv-01005-SMS, 2010 WL 4941453, at *7 (E.D. Cal. Nov. 30, 2010) (citing *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (reiterating that medical source opinions are not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability). Here, in deeming Dr. Syed's opinion unpersuasive on this point, the ALJ correctly cited 20 C.F.R. § 416.920b (AR 24), which provides that a medical source statement that a claimant is disabled and/or not able to work is neither valuable nor persuasive because it is an issue reserved to the Commissioner for his determination.

Third, as set forth above, the ALJ did not error in declining to accord more weight to the opinions of Plaintiff's treating physician (Dr. Syed) than to those of the CE (Dr. Schmidt). Plaintiff identifies no specific errors regarding the ALJ's treatment of Dr. Schmidt's opinion. On its independent review of the ALJ's cited reasons, the Court finds that the ALJ properly assessed that Dr. Schmidt's opinion was "persuasive in part" given the ALJ's noted consideration of Dr. Schmidt's observations but conclusion that the opinion was partially inconsistent with other cited opinions, record evidence, and Plaintiff's testimony, warranting a more limited restriction in Plaintiff's RFC than otherwise called for under Dr. Schmidt's opinion. (AR 23)

## IV. <u>CONCLUSION AND RECOMMENDATION</u>

For the reasons stated above, IT IS HEREBY FOUND and RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is DENIED;
2. The ALJ's decision (Doc. 12) is AFFIRMED; AND
3. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security, terminate any deadlines, and close this case.

These findings and recommendations will be submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). **Within 14 days** after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Objections must not exceed 15 pages. Any pages filed beyond the 15-page limit may be disregarded. Objections may not include exhibits or attachments; however, an objecting party may refer in his objections to an exhibit of record by citing the record and CM/ECF docket and page number.

Any failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 14, 2026**

UNITED STATES MAGISTRATE JUDGE